IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNNY DIAZ,

      **Plaintiff,**

v.                                     No. 99cv1396 BB/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Diaz') Motion to Reverse or Remand the Administrative Decision, filed July 24, 2000. The Commissioner of Social Security issued a final decision denying Diaz's application for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to reverse is well taken and recommends that it be GRANTED.

      Diaz, now fifty years old, filed his application for disability insurance benefits and supplemental security income on July 2, 1997, alleging a disability which commenced July 1, 1994, due to depression, carpal tunnel syndrome, diabetes mellitus, chronic hepatitis C, low back pain, numbness of the hands and feet, memory problems, sleeping disorder and hypertension. He has an eleventh grade education with past relevant work as a cosmetologist. The Commissioner denied Diaz's application for disability insurance benefits and supplemental security income both initially and on reconsideration.

      After conducting an administrative hearing, the Commissioner's Administrative Law Judge

(ALJ) found Diaz had diabetes mellitus, hepatitis C, carpal tunnel syndrome and hypertension, severe medical impairments by regulatory definition.  However, the ALJ found Diaz' impairments did not meet or equal a listing impairment as found in Appendix 1.   In addition, although the ALJ found Diaz did not have the residual functional capacity (RFC) to return to his past relevant work, he had retained the RFC to perform the full range of sedentary work.  Furthermore, the ALJ found Diaz's subjective allegations of disabling pain were supported by "observable manifestations" and reduced his RFC to sedentary work.  The ALJ found Diaz was therefore not disabled within the meaning of the Social Security Act and not entitled to disability insurance benefits or supplemental security income.  On October 12, 1999, the Appeals Council denied Diaz' request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Diaz seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing

42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand the administrative decision, Diaz makes the following arguments: (1) Defendant erred by concluding Plaintiff could perform a wide range of sedentary work, while at the same time adopting the findings of fact of the state medical consultant that Plaintiff could perform light work;  (2) Defendant's findings of fact are not supported by the record as a whole; (3) Defendant erred by failing to properly consider Plaintiff's non-exertional limitations as reducing his ability to perform a wide range of sedentary work; (4) Defendant erred by failing to properly consider Plaintiff's pain as disabling and as reducing his functional capacity below a full range of sedentary work; and (5) Defendant erred by failing to follow the opinion of the vocational expert that a hypothetical person with Plaintiff's limitations could not perform any work and was thus disabled; alternatively, Defendant failed to meet his

burden of proof by failing to present any hypothetical to the vocational expert based on a sedentary work level.

In his decision, the ALJ adopted the findings of Dr. Aide Recalde, a state agency medical consultant, and concluded Diaz could perform the wide range of sedentary work. [1] Tr. 17. This conclusion is not supported by substantial evidence. Dr. Recalde, a non-examining physician, opined Diaz could perform "limited light avoiding some heights/hazards." [2] Tr. 401. Dr. Recalde completed the RFC assessment and determined Diaz could do the following: (1) occasionally lift and/or carry 20 pound; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk for a total of at least 2 hours in an 8-hour workday; (4) sit for a total of about 6 hours in an 8-hour workday; (5) push and/or pull was unlimited. Tr. 395. Dr. Recalde also found no manipulative limitations, gross or fine. Tr. 397. In her report, Dr. Recalde noted Diaz was suffering from "early" peripheral neuropathy and a decreased ability to perceive touch. Tr. 396, 398. Nonetheless, Dr. Recalde, concluded Diaz had no manipulative limitations including fingering (fine manipulation) or feeling. Tr. 397.

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out jobs duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[2] Light work involves lifting no more than 20 pounds at a time  with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

At the administrative hearing, Diaz testified he suffered from numbness in the fingers due to diabetes not just from the carpal tunnel. Tr. 52. Diaz further testified he could "hardly walk at all," sit for no more than an hour or two, stand for maybe 10, 15 minutes, was unable to lift anything with his left hand and lift "maybe a gallon of milk with his right hand." Tr. 55, 56. Diaz testified he suffered excruciating pain. Tr. 49, 50, 52, 53. Diaz also testified he could attend to his personal hygiene but could not do any housework. Tr. 56. Most importantly, Diaz testified about the deterioration he had experienced within the past three years. Tr. 59-65. Specifically, Diaz testified his treating physician had to keep increasing his insulin to control his diabetes and how he suffered from numbness and tingling of his feet and fingers. Tr. 61.

In his decision, the ALJ determined Diaz' had the severe impairment of diabetes mellitus. However, the ALJ concluded the medical evidence did not show any condition meeting the criteria of listing 9.08. Tr. 19, 20. The Court disagrees that substantial evidence supports the ALJ's conclusion that Diaz' impairment did not meet the criteria of listing 9.08.

Under listing 9.08, a claimant is presumed to be disabled if he has diabetes mellitus and "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. P. 404, Subpt. P, App. 1, § 9.08. The medical records indicate Diaz' impairment meets the criteria of listing 9.08. On several visits to his primary health care providers, Diaz complained of pain, cramping, numbness and tingling in both feet which affected his ability to stand or walk. Tr. 282, 289, 291, 292, 296, 298, 327, 355, 358, 390, 435, 447, 453. On these visits the diagnosis was diabetic neuropathy. *Id.* Diaz also consistently complained of pain, numbness and tingling in both hands and loss of sensation is his fingers. Tr. 315, 327, 340,

5

356, 357, 358, 366.  Dr. Stack, Diaz' treating physician, initially diagnosed Diaz with carpal tunnel, but as Diaz' condition deteriorated and his symptoms increased, Dr. Stack diagnosed Diaz' condition as diabetic neuropathy.  Tr. 298.

Moreover, Dr. Stack, Diaz' treating physician, Dr. Horney, the physician who performed the consultative examination, and Ms. Carlson, Diaz' therapist, all opined Diaz was totally disabled and unable to work.  Tr. 376-379, 445.  In his January 7, 1998 consultative report, Dr. Horney refers to a letter written by Dr. Stack in which Dr. Stack opined that Diaz was totally incapacitated.  Although Defendant disputes the existence of this letter, the record reflects Diaz requested a letter of disability from Dr. Stack on December 12, 1997.  Tr. 448.  Additionally, on March 20, 1998, the disability examiner noted in her report that "Dr. Stack indicates inability to work."  Tr. 163, 164.  Therefore, at some point there was a letter from Dr. Stack indicating Diaz was totally incapacitated.  After taking an extensive history, performing a thorough physical examination and reviewing all the medical records, Dr. Horney concurred with Dr. Stack and concluded Diaz "was relatively unable to perform reliable quality work at the present time."  Tr. 376-379.  On November 2, 1998, Ms. Carlson submitted a letter in which she opined Diaz was "not able to work."  Tr. 445.  In her letter, Ms. Carlson indicated she had been counseling Diaz for his depression and management of chronic pain since April 16, 1996.  *Id.*  Furthermore, when the ALJ presented the vocational expert with Diaz' limitations, the ALJ opined Diaz could not work.  Tr. 72.

Under 20 C.F.R. § 404.1527(d)(1) & (2), the agency generally will give more weight to medical opinions from examining and treating sources.  In this case, the ALJ chose to rely on Dr. Recalde's opinion made without benefit of examination.  However, nothing in the record

6

contradicts Diaz' treating physician's opinion that Diaz was totally incapacitated.  "Unless good cause is shown to the contrary, the Secretary must give substantial weight to the testimony of the claimant's treating physician.  If the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  Moreover, evaluation forms completed by agency physicians without examination, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  In this case, Dr. Horney, the agency's consulting physician, after reviewing the record and examining Diaz, concurred with Dr. Stack and found Diaz disabled.  Substantial evidence supports Dr. Stack's and Dr. Horney's conclusions.

      The ALJ also rejected Ms. Carlson's opinion that Diaz' was unable to work due to his depression.  Instead, the ALJ adopted the Psychiatric Review Technique Form (PRT) completed on March 20, 1998 by Dr. Gabaldon, a non-treating, non-examining psychologist.  Tr. 17, 407-415.  In the PRT, Dr. Gabaldon concluded Diaz suffered from depression, however, the depression only slightly limited his activities of daily living, slightly affected his ability to maintain social functioning, and seldom affected his concentration, persistence or pace.  Tr. 414.  These conclusions are contrary to the evidence.

      At the administrative hearing, Diaz testified he had difficulty sleeping, sometimes not sleeping for two or three days.  Tr. 49, 61, (see also Tr. 240).  In response to the ALJ's question regarding what problems his "bad depression" caused him, Diaz testified he stopped associating with his friends and his family, didn't want to be around anybody, and just wanted to be alone.  Tr. 57.  Diaz further testified his desire to be alone led him to seek counseling for his depression

which helped a little, but he still hadn't been able to do anymore than stay home, emphasizing that was all he could do. *Id.* Diaz also testified he had previously been a very active and social person. *Id.*

Ms. Carlson's notes and other mental health care providers' notes indicate Diaz' depression seriously affected Diaz's ability to socialize with others, including his family; affected Diaz' ability to cope with activities of daily living; affected Diaz' self-esteem; and resulted in Diaz having difficulty focusing, concentrating and a poor memory. Tr. 212-274; 456-532. Substantial evidence supports a conclusion that Diaz affective disorder meets listing 12.04, depressive syndrome. The evidence indicates Diaz suffered from sleep disturbances, decreased energy, feelings of worthlessness, and a pervasive loss of interest. Additionally, Diaz' depression seriously affected his activities of daily living and his ability to maintain social functioning.

Considering the record as a whole, the Court finds the ALJ's decision is not supported by substantial evidence. Accordingly, the Court finds that the Secretary failed to meet his burden at step five of the sequential process. Diaz' Motion to Remand or Reverse should be granted. This case should be reversed and remanded to the Secretary with instructions to grant Diaz benefits.

## RECOMMENDED DISPOSITION

The ALJ's decision is not supported by substantial evidence. Diaz' Motion to Reverse and Remand Administrative Decision should be granted. This case should be reversed and remanded to the Secretary with instructions to grant Diaz Social Security benefits.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.